IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


**NATIONAL BUILDERS AND CONTRACTORS
INSURANCE COMPANY, A RISK RETENTION GROUP**                        **PLAINTIFF**


**VERSUS**                              **CIVIL ACTION NO. 2:10cv253KS-MTP**


**PATRICK LANDELL SLOCUM; ANGELA A. SLOCUM;
SLOCUM ROOFING AND CONSTRUCTION COMPANY;
SLOCUM CONSTRUCTION, LLC; SLOCUM CONSTRUCTION;
LANDY SLOCUM ROOFING AND CONSTRUCTION; REGIONS
BANK d/b/a  REGIONS MORTGAGE; and ABC INDIVIDUALS
AND XYZ ENTITIES**                                                  **DEFENDANTS**


### MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#28]** filed on behalf of the plaintiff, National Builders and Contractors Insurance Company ("NBCI"). The court, having reviewed the motion and accompanying brief and legal authorities cited, the pleadings and exhibits on file, and being advised that none of the defendants have responded, finds that the motion is well taken and should be granted. The court specifically finds as follows:


### FACTUAL BACKGROUND

This action arises from a Complaint filed in the Chancery Court of Marion County, Mississippi, arising out of the construction of a residence by Landy Slocum Roofing and Construction and Slocum Construction, LLC ("Slocum"), on property owned by the state

court plaintiff, Laura Peterson.

The state Complaint alleges that on or about January 24, 2007, Peterson entered into a contract for the purchase of real estate in Marion County from Landy Slocum. Peterson alleges a subsequent breach of that contract by Slocum and asks for rescission and cancellation. On September 21, 2007, Patrick Landell Slocum and Angela A. Slocum conveyed certain realty in Marion County to Peterson by warranty deed. According to her state Complaint, Peterson has asked for rescission of that deed and refund of monies paid by her to the Slocums. Peterson also alleges that on that same date, Slocum issued her a new home warranty for a home constructed on the realty, but that Slocum has breached that warranty. The crux of the state Complaint is that Slocum did not properly construct the house on the subject property. The Complaint alleges at least thirty-three specific, but not exclusive, defects in the construction of the house. In addition to her breach of contract claims, Peterson alleges fraud on the part of Slocum. She asks for a rescission of all contracts related to the home purchase, a refund of all sums expended by her or on her behalf in purchasing and repairing the home, attorney's fees, costs and punitive damages.

At all times relevant, Slocum owned NBCI policy number GL2890796 ("NBCI's Policy") with effective dates of February 27, 2007 to August 6, 2009. Slocum has demanded that NBCI provide it with defense and indemnity of Peterson's state court Complaint filed in the Chancery Court of Marion County, under this policy. NBCI filed the present declaratory judgment action asserting no duty to defend nor indemnify and has now moved for summary judgment.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one

of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting*

*Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## DISCUSSION AND ANALYSIS

NBCI argues that based upon the undisputed facts and the terms of its insuring agreement, there is no coverage available for the indemnification nor the defense of Slocum against the Complaint brought by Peterson. NBCI has thus moved for a summary declaration to that effect. None of the defendants have filed any response to the motion.

"Where a contract is clear and unambiguous, its meaning and effect are matters of law." *USF&G Co. v. Omnibank*, 812 So.2d 196, 198 (Miss.2002). "The policy itself is the sole manifestation of the parties' intent, and no extrinsic evidence is permitted absent a finding by a court that the language is ambiguous and cannot be understood from a reading of the policy as a whole." *Great Northern Nekoosa Corp. v. Aetna Cas.*

*and Sur. Co.*, 921 F.Supp. 401, 406 (N.D.Miss.1996)(citing *Cherry v. Anthony, Gibbs, Sage*, 501 So.2d 416, 419 (Miss. 1987). "The construction of an insurance contract is limited to an examination of the written terms of the policy itself." *Great Northern Nekoosa Corp.*, 921 F.Supp. at 406 (N.D.Miss.1996)(citing *Employers Mut. Casualty Co. v. Nosser*, 250 Miss. 542, 553, 164 So.2d 426, 430 (1964)).

In interpreting an insurance policy, the courts "should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *J & W Foods Corp. v. State Farm*, 723 So.2d 550, 552 (Miss. 1998). "The court must construe the policy in a manner that effectuates the parties' intentions." *Great Northern Nekoosa Corp.*, 921 F.Supp. at 406. *See also Western Line Consol. School Dist. v. Continental Cas. Co.*, 632 F.Supp. 295, 302 (N.D.Miss.1986)(citing *Monarch Ins. Co. v. Cook*, 336 So.2d 738, 741 (Miss.1976)).

In determining whether coverage exists in this case, the court must examine whether or not the allegations of Peterson's state court Complaint fall within the terms of the NBCI policy's Insuring Agreement. If they do, then the court must then determine whether any of the exclusions contained within the applicable policy apply.

Part A of NBCI's Policy provides the following in its Insuring Agreement:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit"

    that may result. But:

    (1)    The amount we will pay for damages and "defense expenses" is limited as described in Section III - Limits Of Insurance; and

    (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements and "defense expenses" under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b.    This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)    The "bodily injury" or "property damage" occurs during the policy period; and

    (3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that

        "bodily injury" or "property damage" after the end of the policy period.

   d.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

       (1)   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

       (2)   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

       (3)   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e.   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Section 1—Coverages, Coverage A, Para. 1, Insuring Agreement, as modified by "Defense Expense" Included in the Limit of Insurance Endorsement.

Within the NBCI Policy, "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. No emotional distress is covered except emotional distress caused by bodily injury." Section V. Definitions at ¶ 3.

NBCI argues that in order to trigger coverage under Part A of its Policy for claims of "bodily injury", a physical bodily injury must first occur. As this court has stated,

> The policies define the term "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death, resulting from any of these at any time." Clearly, this contemplates

-8-

>    physical injury.

*Audubon Ins. Co. v. Stefancik*, 98 F.Supp.2d 751, 756 (S.D. Miss. 1999).

There is no allegation contained in Peterson's state Complaint that there has been any claimed physical injury to Peterson on account of the construction of the subject house.  There is, thus, clearly no claim for "bodily injury" in Peterson's state Complaint.

Next, NBCI contends that none of the alleged "property damage" in Peterson's state Complaint have been caused by an "occurrence" as defined in the Policy because to the extent that the damages claimed by Peterson constitute damages because of "property damage", NBCI's Policy requires that they be caused by an "occurrence."  The NBCI Policy defines "occurrence" as follows:

>    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Section V, Definitions at ¶13.

As stated, the policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  It does not define "accident."  However, the Mississippi courts and federal courts interpreting Mississippi law have had ample opportunity to review what "accident" means in the exact context of the policy language at issue.

The Mississippi Supreme Court has held that an accident is something which "produces unexpected and unintended results" from the standpoint of the insured. *Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d 714, 719 (Miss. 2004).  Further, "the term accident refers to [the insured's] action and not whatever unintended damages flowed

-9-

from the act." *ACS Const. Co., Inc. Of Mississippi v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003)(quoting *Allstate Ins. Co. v. Moulton*, 464 So.2d 507, 510 (Miss. 1985)). Additionally, the Mississippi court has clearly held that claims arising from intentional conduct that create foreseeable harm, regardless of the ultimate injury or damage, are not covered under the type of policy language at issue here. *See Omnibank*, 812 So.2d at 201.

The Mississippi Supreme Court has articulated a test to determine whether an incident falls under the definition of "accident," and is thus an "occurrence" under commercial liability policies such as the NBCI Policy. It held that an act is not an "accident," and thus not an "occurrence" if:

> (1) the act is committed consciously and deliberately, without the unexpected intervention of any third force; and
>
> (2) the likely (and actual) effect of the act was well within the actor's foresight and anticipation.

*Moulton*, 464 So. 2d at 509.

Therefore, a reviewing court must determine whether a chain of events leading to the damages complained of by a plaintiff was set in motion and followed a course of action committed consciously and deliberately and controlled by the insured without the unexpected intervention of any third party or extrinsic force. *Moulton*, 464 So.2d at 509. Then, the court must also determine whether the likely (and actual) effect [*i.e.*, damage] of those actions were well within the putative insured's "foresight and anticipation." *Id.*

The Mississippi Supreme Court has addressed this issue in the context of construction defect claims in *Architex Association, Inc. v. Scottsdale Insurance Co.*, 27

So.3d 1148 (Miss. 2010). In that case, the Mississippi Supreme Court recently held that construction defects <u>may</u>, in fact, constitute an "accident" or "occurrence" under an ISO CGL policy, based upon the underlying cause of the defects.

The Scottsdale policy at issue in *Architex* was an ISO CGL form policy containing an insuring agreement standard to policies of that type and similar to the policy at issue herein, providing coverage for suits seeking a loss for damages, either because of 'bodily injury" or "property damage" as those terms are defined in the policies, and caused by an "occurrence." The *Architex* Court held that defective or faulty workmanship could be caused by an accident, but that the issue should be determined on a case-by-case, fact-by-fact basis. Specifically, the Court stated,

> It appears that part of the confusion between insurers and insureds, and in conflicting opinions of courts, is caused by branding faulty workmanship, defective work, and other similar phrases as "occurrences" or not. Faulty workmanship, defective work, et al., may be accidental, intentional, or neither. A return to basics leads this Court to conclude that the underlying facts will determine whether the Complaint of "property damage" (defective or faulty workmanship) was proximately caused by breach of a recognizable duty and whether that breach was accidental or intentional; or, whether the "property damage" was caused by neither. In two of the three aforementioned scenarios, no coverage would exist. Only when "property damage" is proximately caused by an accident (an inadvertent act) does an "occurrence," as defined by the policy, trigger coverage. The record before us is insufficiently developed to answer that question with certainty.

*Architex Association Inc. v. Scottsdale Ins. Co.*, 27 So.3d at 1160-61. Therefore, in addressing the issue of whether Peterson's alleged "property damage" has been caused by an "occurrence," the court must attempt to discern from the allegations of the state Complaint whether the conduct of NBCI's insured that resulted in the damages complained of was either intentional, accidental, or "otherwise."

-11-

As to the type of claims asserted by Peterson in her state Complaint for breach of contract, breach of express and implied warranties of merchantability, fitness and habitability, the United States Court for the Northern District of Mississippi stated in *Mendrop v. Shelter Mut. Ins. Co.*, No. 2:05CV15-P-B, 2007Wl4200527 (N.D. Miss. 2007):

> The Montgomery's complaint delineates a number of theories of recovery sounding in contract: breach of contract, breach of express warranty, breach of implied warranty, breach of implied covenant of fair and honest dealing, and violation of Mississippi's disclosure statute. The actions expressly allege intentional violations of the Mendrops' contractual obligations. In *Brewer*, discussed *supra*, the district court held that "economic and contractual" damages do not fall within the coverage of insurance policies covering claims for bodily injury or property damage caused by an "occurrence" because breach of contract actions do not result from accidental losses. The Shelter policy likewise affords no coverage, thereby absolving the insurer of any duty to provide the Mendrops with a defense against such claims in the underlying action.

2007 WL 4200827, *8.

It is clear that at no point in Peterson's state Complaint does she allege that Slocum inadvertently failed to perform any of the actions complained of related to her breach claims. Instead, Peterson's Complaint makes clear that she alleges specific failures of Slocum in carrying out its duties in constructing the home pursuant to the contract in a workman like manner resulting in faulty construction and the specifically alleged defects set forth in the Complaint. *See Acceptance Ins. Co. V. Powe Timber Co., Inc.* 403 F.Supp.2d 552, 556 (S.D. Miss. 2005), *aff'd* 219 Fed.Appx. 349 (5th Cir. 2007) (noting that a failure or omission to act when required to do so is not accidental and is just as intentional as an affirmative act).

It is clear from the allegations of Peterson's state court Complaint that the alleged

failure of Slocum to build the house in accordance with the contract and its warranty obligations was conscious and deliberate - not inadvertent or by mistake. The allegations made by Peterson against Slocum doe not qualify as "accidents" under Mississippi law. *See Powe*, 219 Fed.Appx. at 352. Thus, Peterson's breach or contract and warranty claims do not allege an "occurrence" under the NBCI Policy.

NBCI next argues that Peterson's state claims of fraud and misrepresentation do not allege an "occurrence" under the Policy issued to Slocum either. Thus, the question is whether the alleged actions of Slocum, whether negligent or intentional, constitute "accidents" as defined by the prevailing law. In this regard, Peterson alleges that Slocum purposely misled her about its ability to properly construct her home. She also alleges that Slocum made misrepresentations about the work to be performed and purposely misled her by telling her the home had been inspected and everything was proper.

It makes no difference whether some of the alleged misrepresentations were negligent as opposed to intentional under Peterson's Complaint. In a claim involving negligence in the misrepresentation by a seller to a potential purchaser, the first element of proof is a showing that the seller made a misrepresentation of fact that the seller knows or should know is not factual. *See Shelter Mutual Ins. v. Brown*, 345 F.Supp.2d 645, 650 (S.D. Miss. 2004) (holding that the failure of a seller to reveal facts known to him "is not the type of undesigned, sudden and unexpected event which would give rise to an occurrence or accident as those terms are contemplated under Mississippi law."). It is thus clear that Peterson's claims alleging fraud and misrepresentation do come within the definition of an "occurrence" as defined in the

-13-

NBCI Policy and interpreted by Mississippi law. The same is true of Peterson's allegations related to her attempt to secure punitive damages against Slocum as Peterson would have to prove Slocum acted with actual malice, gross negligence or reckless disregard for her rights. *See Murphee v. Federal Ins. Co.*, 707 So.2d 523 (Miss. 1997).

The court has concluded that no coverage was triggered under the NBCI Policy as a result of the actions complained of in Peterson's state court Complaint. Nevertheless, the policy also contains various exclusions that further prevent coverage in this case. The first is the "Expected or Intended Injury" exclusion contained in the policy. Under this exclusion, the actions of Slocum Construction in building the subject house without the aid of a survey or other title verification means that the alleged damages flowing therefrom are not covered under the NBCI's Policy.

NBCI's Policy states, in pertinent part as follows:

This insurance does not apply to:

> a. Expected Or Intended Injury
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Section I, Coverage A- at ¶ 2. a.

This analysis is similar to the determination of whether an "accident" caused an "occurrence" as defined in the policy. The court will only briefly retrace some of the necessary steps concerning that analysis to support its findings on this issue.

The exclusionary language applies to bodily injury which is expected or intended from the standpoint of "the insured." This is important because it dictates from which

perspective the inquiry begins. In other words, in the absence of such language, it would have to be determined whether the insured not only expected and intended to act, but also expected and intended to cause the bodily injury that resulted from his actions. *See Moulton*, 464 So.2d at 509-510. However, since the exclusionary language merely requires that the damage at issue be intended or expected by the insured, then all the court needs to look for is whether the putative insured's actions were intended, and not the specific consequences of those actions. Along this line, the *Moulton* court stated:

> The Policy states unequivocally that occurrence is to be interpreted "from the standpoint of the insured". Thus, by the terms of the Policy, we are precluded from interpreting "occurrence" or "accident" from the standpoint of the injured party. We are of the opinion that the contract is sufficiently unambiguous for us to hold that the term "accident" refers to Ms. Moulton's action and not whatever unintended damages flowed from that act.

*Moulton*, 464 So.2d at 510.

Therefore, when looking from the insured's perspective, as opposed to the victim's perspective, 'the question of intent does not relate to whether the defendant intended to harm the plaintiff but rather to whether the defendant intended to take the action to cause the harm." *Barry v. McLemore*, 795 F.2d 452, 457, n.4 (5th Cir. 1986). *See also Virginia Insurance Reciprocal v. Forrest County General Hospital*, 814 F.Supp. 535, 537 (S.D. Miss. 1993).

As discussed above, the alleged actions of Slocum in failing to construct the house in a workman like manner and in accordance with the contract was consciously and deliberately done, according to the allegations of the state Complaint. Likewise for Peterson's claims of fraud and misrepresentation. Thus, the damages allegedly sustained by Peterson as a result of such actions or omissions were well within the

likely and actual foresight and anticipation of Slocum. Therefore, any injury or damage sustained by Peterson is subject to the "Expected or Intended Injury" exclusion contained in NBCI's policy.  Additionally, there are a number of other exclusions which would apply to obviate coverage for Peterson's state claims which are not necessary for the court to delve into based on the foregoing.

The court therefore finds that the plaintiff, National Builders and Contractors Insurance Company, is entitled to summary judgment on its motion and a declaratory judgment that it owes neither coverage nor a duty to defend under Policy Number GL2890796 issued to Slocum Construction, LLC, for claims arising from the state court Complaint filed by Laura Peterson in the Marion County Chancery Court.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#28]** filed on behalf of the plaintiff, National Builders and Contractors Insurance Company, is granted and that  National Builders and Contractors Insurance Company is granted a declaratory judgment that it owes neither coverage nor a duty to defend under Policy Number GL2890796 issued to Slocum Construction, LLC, for claims arising from the state court Complaint filed by Laura Peterson in the Marion County Chancery Court.

SO ORDERED AND ADJUDGED this the 26th day of July, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE